## UNITED STATES *v.* VANDEGRIFT & CO. (No. 2149).[1]

1. AXMINSTER RUGS.

Axminster rugs are of three kinds—Costly ones made by hand and requiring much time and labor for their production; less costly ones closely resembling the handmade ones, but woven quickly as single entities, on power looms; and still less costly ones cut from machine-woven lengths bearing repeated Axminster patterns.

2. CONSTRUCTION, PARAGRAPH 300, TARIFF ACT OF 1913—CARPETS—RUGS.

Paragraph 300, tariff act of 1913—"Carpets of every description, woven whole for rooms, and Oriental, Berlin, Aubusson, Axminster, and similar rugs"—is limited to carpets, carpeting and rugs which are woven as complete, separate, single entities.

3. CONSTRUCTION, PARAGRAPH 303, TARIFF ACT OF 1913—"PORTIONS OF CARPETS OR CARPETING."

Paragraph 303, tariff act of 1913, providing that "Mats, rugs for floors * * * and other portions of carpets or carpeting, * * * not specially provided for" shall bear the same rate of duty as carpets or carpeting of like character and description, provides for rugs which are not woven whole for rooms or as single entities, but which are portions of carpets or carpeting or made therefrom.

4. CHEAP MACHINEMADE AXMINSTER RUGS.

Axminster rugs made by cutting them from running machinemade lengths and binding their ends are not to be classified as Axminster rugs, under paragraph 300, tariff act of 1913, but are dutiable as Axminster carpeting under paragraph 293, by virtue of paragraph 303.—Beuttell & Sons *v.* United States (8 Ct. Cust. Appls. 409; T. D. 37666) limited.

## United States Court of Customs Appeals, May 26, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44587.

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Harry M. Farrell*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument April 25, 1922, by Mr. Lawrence and Mr. Tompkins.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

SMITH, Judge, delivered the opinion of the court:

Certain rugs imported at the port of Philadelphia and classified by the collector of customs as Axminster rugs were assessed for duty at 50 per cent ad valorem under paragraph 300 of the tariff act of 1913, which paragraph reads as follows:

300. Carpets of every description, woven whole for rooms, and Oriental, Berlin, Aubusson, Axminster, and similar rugs, 50 per centum ad valorem.

[1] T. D. 39144.

The importer protested that the rugs were dutiable at 35 per cent ad valorem under paragraph 293 by virtue of paragraph 303, which said paragraphs in so far as pertinent are as follows:

293. Aubusson, Axminster, moquette, and chenille carpets, figured or plain, and all carpets or carpeting of like character or description, 35 per centum ad valorem.

303. Mats, rugs for floors * * * and other portions of carpets or carpeting, * * * not specially provided for in this section, shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description.

The Board of General Appraisers sustained the protest and the Government appealed.

It appears from the evidence that the rugs covered by the protest are woven in running lengths of 50 to 100 yards, which running lengths after weaving are cut at a point indicated by the design into separate rugs. The rugs cut from the running lengths are completed by binding or turning back and sewing the ends.

The Government abandoned its appeal as to the rugs made of chenille, but contends that the testimony establishes without contradiction that the rest of the rugs are *Axminster* rugs and that therefore these rugs are dutiable under paragraph 300 as assessed by the collector and not under paragraph 293 as claimed by the importer. In support of that contention the Government cites the cases of Beuttell & Sons *v.* United States (8 Ct. Cust. Appls. 409; T. D. 37666) and United States *v.* Gertzen Co. (8 Ct. Cust. Appls. 428; T. D. 37668).

The making of rugs and carpets was an established oriental industry hundreds of years before the manufacture of such articles became a part of the industrial economy of Europe. Such rugs and carpets were originally made by hand, and whether they covered the whole floor or only a part of it, they were woven as complete single entities which from center to border were the work of the weaver. The manufacture of rugs and carpets began in Spain about the end of the fifteenth century, in France in the first quarter of the sixteenth century, and in England about the beginning of the eighteenth century. The oriental rug was the handmade rug of the East, the Aubusson the handmade rug of France, and the Axminster the handmade rug of England. The invention of power looms in 1783 and the development of improvements therein by Erastus Bigelow in 1841, made possible the manufacture by steam-driven machinery of rugs and carpets, so closely resembling those made by hand that the power-loom imitations not only took the name of the original after which they were patterned, but almost drove that commodity out of the market. Hand-woven rugs and carpets are still made, however, in France, England, and Ireland, and continue to figure as commercial products. (See carpets—Encyclopedia Britannica; see carpets and rugs—New International Encyclopedia.) Bigelow's

inventions apparently brought about the weaving of carpets in very long lengths and from that finally came, it seems, the repeating in running lengths of the patterns of rugs. Such running lengths were converted into rugs by cutting across the warp at the place indicated by a drop in the pile and then binding the ends to prevent the fraying out of the fabric. Rugs so made, like the first power-loom rugs, took the name of some handmade rug, but as they were cut from running lengths it is apparent that they were a much cheaper product than either the handmade rug or the original power-loom rug.

From this brief history of carpet and rug making it is clear that rugs made by three different processes of manufacture may nevertheless bear the same name. And so we have first, costly Axminster rugs made by hand and requiring much time and labor for their production; second, less costly Axminster rugs closely resembling the handmade rug, but woven quickly as single entities on power looms; and third, cheaper Axminster rugs cut from lengths bearing repeated Axminster patterns and woven in lengths as are power-loom Axminster carpets. Barring the pattern, rugs of the third class do not rank with either the handmade or the power-loom article woven whole or as single entities and are more like rugs made by binding short strips of carpet or by cutting lengths of carpets into strips and binding or hemming the ends of the strips.

Paragraph 300 provides for carpets "woven whole for rooms" and for oriental, Berlin, Aubusson, Axminster, and similar rugs. As the original handmade rugs bearing these names and their power-loom namesakes are woven whole, that is, as complete single entities, and as carpets "woven whole for rooms" may be called either carpets or rugs according to the floor space covered, we feel warranted in concluding that the scope of paragraph 300 is limited to carpets, carpeting, and rugs which are woven as complete separate single entities. Paragraph 303, on the other hand, provides for rugs which are not woven whole for rooms or as single entities, but which are portions of carpet or carpeting or made therefrom. As Axminster and chenille carpets are provided for by name in paragraph 293, and as the rugs under consideration are not carpets or rugs woven whole for rooms or as single entities, but are either portions of Axminster carpeting or cut from lengths of Axminster carpeting, we think the goods here involved are more specifically provided for in paragraph 293 by virtue of the provisions of paragraph 303, than they are by paragraph 300, which is limited to Axminster rugs produced by a different manufacturing process.—Beuttell *v.* United States (7 Ct. Cust. Appls. 356; T. D. 36905); Beuttell *v.* Magone (157 U. S. 154, at p. 158).

Of course, if rugs are assessed as Axminster rugs at 50 per cent ad valorem under paragraph 300 and the importer fails to show that such rugs were made from portions of carpets or carpetings, the

assessment must stand.—Beuttell *v.* United States (8 Ct. Cust. Appls. 409–413; T. D. 37666); United States *v.* Gertzen Co. (8 Ct. Cust. Appls. 428; T. D. 37668). If, however, it be shown that such rugs were not woven whole for rooms or as separate entities, but were made from portions of carpets or carpetings, then by virtue of paragraph 303 they are subject to the rate of duty imposed by the tariff act on carpets or carpeting of like character or description.—Beuttell & Sons *v.* United States (7 Ct. Cust. Appls. 356; T. D. 36905); United States *v.* Carson, Pirie, Scott & Co. (8 Ct. Cust. Appls. 240; T. D. 37519); Beuttell & Sons *v.* United States (8 Ct. Cust. Appls. 409; T. D. 37666); United States *v.* Snellenburg & Co. et al. (9 Ct. Cust. Appls. 59; T. D. 37939); United States *v.* Trorlicht, Duncker Carpet Co. et al. (10 Ct. Cust. Appls. 254; T. D. 38618).

The decision of the Board of General Appraisers is therefore *affirmed.*

### CONCURRING OPINION.

BARBER, Judge: I concur in the foregoing opinion, but think it should be noticed that it results in limiting the views expressed in Beuttell & Sons *v.* United States (8 Ct. Cust. Appls. 409 at 420; T. D. 37666), wherein, in language of which I was the author, it was said without qualification that Axminster rugs in the statute were "regarded as properly classifiable with the most valuable rugs, such as Oriental, Aubusson, and Berlin."

The logic of the instant case is to modify the quoted statement in effect by saying that *certain* Axminster rugs were so regarded.